UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHERRI BETTENCOURT,<br><br>*Plaintiff*,<br><br>UNITED AIRLINES, INC., and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO<br><br>*Defendants*. | Civil Action No. _____<br>Jury Demanded |

## COMPLAINT

COMES NOW Sherri Bettencourt and complains of United Airlines Inc (hereinafter United), and Association of Flight Attendants-CWA, AFL-CIO (hereinafter AFA) as follows:

### NATURE OF THE CASE

1. Bettencourt brings this hybrid breach of the duty of fair representation case against her employer, United, and her union, AFA, pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq*. United and AFA conspired to terminate Plaintiff following her medical leave which began on August 10, 2017.

### PARTIES

2. Sherri Bettencourt is a citizen and resident of Montgomery Texas.

3. UNITED AIRLINES is a Delaware corporation doing business in Texas and may be served through its registered agent, CT Corporation System, 1999 Bryan St. Dallas TX, 75201-3136.

4. ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO is a union and the

certified collective bargaining representative for all United Flight Attendants and may be served with process through at AFA-CWA, 7900 FM 1960 W, Unit H145, Humble, TX 77338.

## JURISDICTION and VENUE

5. Subject-matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and under 28 U.S.C. § 1332 because the parties are of diverse citizenship and more than $75,000 is in controversy. Supplemental jurisdiction exists under 28 U.S.C. § 1367 over all claims over which it does not have original jurisdiction since all claims arise out of United's and AFA's mistreatment of Bettencourt beginning in December 2007.

6. Personal jurisdiction over United exists because United has offices in Houston Texas and conducts extensive administrative, flight, and maintenance operations at Bush airport in Houston, Texas.

7. Personal jurisdiction over AFA exists because AFA conducts extensive operations at Bush airport in Houston, Texas, including maintaining a domicile there and representing union members there.

8. Venue is proper in this district under 28 U.S.C. § 1391 and 29 U.S.C. § 185(c) ("district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members") because AFA acts for its members in Houston through the Houston Domicile and because a substantial part of the acts giving rise to this action took place in the Houston greater metropolitan area.

## FACTUAL BACKGROUND

9. Sherri Bettencourt has been a long-time employee (22 years) of Continental

Airlines and subsequently United Airlines having worked for them since she was 21 years old. As such, her pay has increased over the years due to her excellent performance on the job as well as her tenure. Now age 43, she has devoted her entire professional life to Continental/United.

10. On or about August 10, 2014, Sherri Bettencourt suffered an occupational injury and began her Leave of Absence as a result of such injury. PM CAL CBA (hereinafter CBA-1) section 14.C.2 and 17.B.1 were in effect at the time and for all relevant periods up to and including Sherri Bettencourt's termination as well as the time of the relevant correspondence regarding her discharge.

11. Section 14.C.2 Provided as follows:

"Leaves of Absence required due to occupational injury will be granted upon written verification from a qualified medical doctor. Any such leave may not exceed the lesser of: (1) the period of disability, or (2) *six (6) years*, or (3) the flight attendant's total length of active service. While on this type of leave, the flight attendant accrues seniority for all purposes At the end of the maximum period, the flight attendant will be terminated and removed from the System Seniority List.

Thus, at the time that Sherri Bettencourt became injured at work, this provision allowing six years prior to administrative termination was in effect.

12. JCBA went into effect September of 2016. Sherri Bettencourt was not active (and had not been active for over 2 years) at the time of the ratification of JCBA, nor was she provided a copy of the JCBA by United at the time of its ratification or any time to date. After leaving due to **occupational injury** JCBA Section 15.E. was ratified and purports to address **non occupational** injuries. Because Sherri Bettencourt's injury was **occupational,** Section 15.E does not apply. Section shortens the period by half for administrative termination following leave of absence and it is that section that the company relied on in terminating Sherri Bettencourt. By contrast, Sherri Bettencourt relied to her detriment on the CBAs existing at the time of her occupational medical leave to the time of her termination.

13. On August 13, 2017, Sherri Bettencourt attempted to list for a flight but she was locked out of the system. In response, she called her supervisor and left two voicemails. The next morning Sherri received by overnight mail a letter obviously generated in response to her voicemails indicating that she had been terminated effective August 10, 2017.

14. Thereafter, on August 28, 2017, the union (AFA) signed an understanding and agreement with the company stating that **occupational** medical leaves are intended to be governed by the provisions of Section 15.E. of the JCBA. Thus, for the entire tenure of Sherri Bettencourt, her **occupational medical leave** had to exceed six years before she could be administratively terminated and only after her administrative termination did the AFA, in collusion with United, change the rules to encompass Sherri Bettencourt's circumstances. It is not coincidental that, due to her age and tenure, Ms. Bettencourt could be easily replaced with a younger and less expensive flight attendant.

15. It is noteworthy that the United, and now the AFA, have relied on two letters they contend were sent to Sherri Bettencourt about a year before her termination. Sherri Bettencourt contends she never received either of them.

16. The first letter was dated September 29, 2016 and purports to put Sherri Bettencourt on notice of the change in the CBA. It was a form mass mailing as opposed to a letter directed to Sherri Bettencourt herself and Sherri was not made aware of it until after her termination. Section 17.B.1 of the CBA in effect at the time of that letter specifically provides that letters that could result in the discipline of a flight attendant will "be given to the flight attendant in person or **sent by certified mail, return receipt requested.**" Not only was it never received by Sherri Bettencourt, it was irresponsible and unethical that United would send a "form letter" to flight attendants on leave in September of 2016 as part of a mass mailout to notify these employees of

potential LOSS OF EMPLOYMENT with no tracking numbers or return receipt.

17. On July 23, 2019, Sherri Bettencourt was sent a letter **from AFA** declining to take further action on Sherri Bettencourt's behalf and citing the argument of United verbatim—in essence taking the exact opposite position AFA had allegedly taken to that point.

## COUNT I
## BREACH OF THE DUTY OF FAIR REPRESENTATION

18. Sherri Bettencourt realleges and incorporates by reference all allegations and facts contained in this complaint as though fully set forth here.

19. Under the Railway Labor Act, AFA-CWA, as the exclusive bargaining agent of United Flight attendants, including Sherri Bettencourt, owes Sherri Bettencourt a duty of fair representation. *See Vaca v. Sipes* 386 U.S. 171, 87 S. Ct. 903 (1967). This duty inherently includes a duty to perform a reasonable investigation. *See id.*; *Turner v. Air Transport Dispatchers' Assoc.,* 468 F.2d 297, 299-300 (5th Cir. 1972) ("It is beyond doubt that the duty of fair representation includes an obligation to investigate and to ascertain the merit of employee grievances").

20. A union violates its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith. *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67, 11 S.Ct. 1127 (1991). A union's actions are arbitrary if the union exhibits egregious disregard for the union member or if the action was irrational. *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46, 119 S.Ct 292 (1998). The union must especially avoid arbitrary or perfunctory behavior when the grievance involves an employment discharge — "the industrial equivalent of capital punishment." *Griffin v. Int'l Union,* 469 F.2d 181, 183 (4th Cir. 1972); *see also Miller v. Gateway Transp. Co., Inc.,* 616 F.2d 272, 277 n. 12 (7th Cir. 1980).

21. A union must also provide to its members "similar treatment." *Buford v. Runyon,*

160 F.3d 1199, 1202 (8th Cir. 1998). *See also Vaca,* 386 U.S. at 191 (labor laws are designed to ensure that "similar complaints will be treated consistently"). *Cf. Carter v. United Food and Commercial Workers. Local No. 789,* 963 F.2d 1078, 1082 (8th Cir. 1992).

22. AFA, with United's collusion, breached its duty of fair representation and the terms and obligations imposed by the collective bargaining agreement by entering into an agreement after the termination of Sherri Bettencourt to retroactively apply section 15.E.2 to occupational medical leave injuries when during the entire tenure of Sherri Bettencourt, either the previous administrative termination provision (allowing for 6 years away from work before administrative termination could occur) or section 15.E.2 applied which did not pertain to occupational injury claims until AFA negotiated an agreement to bring Sherri Bettencourt's circumstance under the umbrella of section 15.E.2 *after* her termination.

23. Secondly, AFA, with United's collusion, breached its duty of fair representation and the terms and obligations imposed by the collective bargaining agreement by reversing its position and abandoning Sherri Bettencourt through its letter dated July 23, 2019, accepting United's position in the controversy and abandoning assistance to Sherri Bettencourt.

## COUNT II
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT/PROMISSORY ESTOPPEL

24. Sherri Bettencourt realleges and incorporates by reference all allegations and facts contained in this complaint as though fully set forth here.

25. A union member may sue her employer for breach of the collective bargaining agreement if she also sues her union for a breach of the duty of fair representation. An employer is jointly liable with a union for the union's breach of its duty of fair representation if the employer participates in the union's breach. *See, e.g., United Independent Flight Officers, Inc. v. United Air Lines, Inc.*756 F.2d 1274 (7th Cir. 1985), *citing Alvey v. General Electric Co.,* 622 F.2d 1279,

1290 (7th Cir.1980).

26. When Sherri Bettencourt was injured on the job, her employment was subject to the terms of the collective bargaining agreement described in paragraph 11 above, which protected the employee from administrative termination for six years from the date of the occupational injury. That provision remained in place throughout the tenure of Sherri Bettencourt and even after her termination.

27. The provision of the PM CAL CBA Section 14.C.2 constitutes a promise and is intended to be relied upon by all employees.

28. Sherri Bettencourt in fact relied upon PM CAL CBA Section 14.C.2 and reported back within the window set forth in that contractual provision. Only after she was terminated was the new provision of the contract retroactively inserted to validate the otherwise wrongful termination of Sherri Bettencourt. Therefore, a promise was made, intended to be relied upon by the promissor, in fact relied upon to the detriment of the promissee, causing her damages.

29. The termination of Sherri Bettencourt constituted a breach of contract at the time of her termination and could not be "unbreached" after the fact by unilaterally agreeing with the union to exclude people like Sherri Bettencourt who were otherwise protected by the collective bargaining agreement.

**PRAYER FOR RELIEF**

30. Sherri Bettencourt realleges and incorporates by reference all allegations and facts contained in this complaint as though fully set forth here.

31. Sherri Bettencourt respectfully prays for judgment including:

   a. Full back pay for Bettencourt's unwarranted termination plus interest, pension rights, and other benefits;

    b.    Damages for harm to Sherri Bettencourt's career at United and reputation;

    c.    Punitive and exemplary damages in an amount to be determined by the jury;

    d.    Reasonable attorneys' fees and costs; and

    e.    Any other relief in law or equity to which Sherri Bettencourt may be justly entitled.

## JURY DEMAND

32. Sherri Bettencourt demands trial by jury on all issues.

Respectfully submitted,

*Mike McCormick*

Mike McCormick
MCCORMICK & BOYD PLLC
Michael Y McCormick
Texas State Bar number 13461030
800 Town and Country Suite 300
Houston, TX 77024
Michael McCormick direct dial 713-254-0099
michael@mccormickandboyd.com
www.mccormickandboyd.com
ATTORNEY FOR PLAINTIFF SHERRI BETTENCOURT